GIBSON, DUNN & CRUTCHER LLP
BRIAN M. LUTZ, SBN 255976
    blutz@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8200

JESSICA VALENZUELA, SBN 220934
    jvalenzuela@gibsondunn.com
JEFFREY D. LOMBARD, 285371
    jlombard@gibsondunn.com
SOFIA RITALA, SBN 342253
    sritala@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301
Telephone: 650.849.5300

COLIN B. DAVIS, SBN 273942
    cdavis@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
Telephone: 949.451.3800

*Attorneys for Defendants Block, Inc., Jack Dorsey,
and Amrita Ahuja*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CORINNE GONSALVES, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BLOCK, INC., JACK DORSEY, and AMRITA AHUJA, <br><br> Defendants. | Case No. 5:25-cv-00642-NW <br><br> <u>CLASS ACTION</u> <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF THE ORDER ON DEFENDANTS' MOTION TO DISMISS** |

Gibson, Dunn &
Crutcher LLP

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendants Block, Inc. ("Block" or the "Company"), Jack Dorsey, and Amrita Ahuja (collectively, "Defendants"), by and through their undersigned counsel, will, and hereby do, move the Court for leave to file a motion for reconsideration of the Court's January 6, 2026 denying Defendants' Motion to Dismiss the First Amended Consolidated Class Action Complaint (the "Order") (Dkt. 123), pursuant to Civil Local Rule 7-9(b)(3), Rule 54(b) of the Federal Rules of Civil Procedure, and the Court's inherent authority.

Defendants seek leave to file a motion for reconsideration of the Order for three reasons:

1. The Court's loss causation holding does not consider what statements were "corrected," as required by the relevant legal authority.

2. The Court did not apply the stringent requirements for pleading falsity outlined in the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), which governs this securities class action.

3. The Court did not apply the stringent requirements for pleading scienter outlined in the PSLRA.

This Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the [Proposed] Order submitted herewith, the proposed motion for reconsideration attached as Exhibit A, the pleadings and papers on file in this action, and any other matters and arguments as the Court may consider.

## RELIEF REQUESTED

Defendants respectfully request that the Court grant leave to file a motion for reconsideration of the Court's January 6, 2026 Order denying Defendants' Motion to Dismiss the First Amended Consolidated Class Action Complaint.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should grant Defendants leave to file a motion for reconsideration of the January 6, 2026 Order denying Defendants' Motion to Dismiss the First Amended Consolidated Class Action Complaint.

Gibson, Dunn & Crutcher LLP

i

Dated: January 27, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/   Brian M. Lutz*

Brian M. Lutz, SBN 255976
blutz@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8200

Jessica Valenzuela, SBN 220934
jvalenzuela@gibsondunn.com
Jeffrey Lombard, SBN 285371
jlombard@gibsondunn.com
Sofia Ritala, SBN 342253
sritala@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301
Telephone: 650.849.5300

Colin B. Davis, SBN 273942
cdavis@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
Telephone: 949.451.3800

*Attorneys for Defendants Block, Inc., Jack Dorsey, and Amrita Ahuja*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants Block, Inc., Jack Dorsey and Amrita Ahuja (collectively, "Defendants") respectfully seek leave under Civil Local Rule 7-9 to file a motion for reconsideration of the Court's January 6, 2026 Order denying Defendants' Motion to Dismiss the First Amended Consolidated Class Action Complaint (the "Order").

Although the Court in the Order acknowledges this is a securities class action governed by the strict pleading standards under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Defendants respectfully submit that the Order does not reflect analysis of the allegations in the Complaint with the rigor required by statute and precedent in this Circuit. The Order does not analyze (i) whether each of the five alleged corrective disclosures revealed ***new facts*** that ***corrected*** the alleged misstatements; (ii) whether the Complaint alleges facts that show ***each*** of the 38 alleged misstatements was false or misleading ***at the time it was made***; and (iii) whether the Complaint raises a strong and compelling inference that, ***at the time each alleged misstatement was made***, the individual Defendants knew or were deliberately reckless in not knowing that each challenged statement was false or misleading.

The PSLRA-mandated analysis is even more pressing than usual in this case, where Plaintiffs have pled an unusually long five-year putative class period and claimed that seemingly every time Block uttered the word "compliance" or mentioned Cash App account metrics, the statement was fraudulent. Under these circumstances, the PSLRA requirement that a complaint plead specific facts demonstrating that a statement was false or misleading ***at the time it was made*** and that the speaker ***at that time*** possessed information demonstrating that they ***knew or deliberately ignored*** that the statement was not true is critically important. Further, because Plaintiffs allege the challenged statements were corrected over an abnormally long 25-month time period, it is essential for the Court to analyze each of the five purported "partial corrective disclosures" to determine whether they meet the requirements for pleading loss causation under the PSLRA.

Without reconsideration and refinement of the Order to reflect the rigorous analysis required, it will be extremely difficult to move this case forward in a timely and productive manner. Defendants

Gibson, Dunn & Crutcher LLP

1

will be subjected to needlessly far-reaching and expensive discovery covering an unduly lengthy period, and class certification and summary judgment will focus on multiple disclosures over several years that on their face were not "corrective."  The PSLRA was designed to avoid exactly this predicament.

To be sure, Defendants are prepared to defend this case with respect to any statements the Court concludes—under the rigorous analysis required—were (i) sufficiently pled to be false or misleading at the time they were made, (ii) supported by specific facts demonstrating that the speaker acted with scienter based on his or her knowledge of facts at the time of the statement (and not some unspecified time), and (iii) sufficiently alleged to be corrected by the revelation of new (not repeated) information that revealed the falsity of the statement and caused a stock drop.  But litigating a sprawling case about 38 statements over a five-year period and through five different stock drops will be unduly burdensome and unnecessary—and can be avoided through reconsideration of the Order and application of the PSLRA analytical framework.

Accordingly, reconsideration of the Order is necessary to correct the Court's clear error and prevent manifest injustice.

## II.   BACKGROUND

Plaintiff filed the operative amended complaint on June 18, 2025.  Dkt. 106 ("Complaint"). The Complaint challenges 38 statements by the Defendants concerning (i) the strength and effectiveness of Cash App's compliance controls and (ii) Cash App's account metrics.  The purported class period is extraordinarily long, spanning from February 26, 2020 to May 2, 2025, and marked by five "partial corrective disclosures" beginning on March 23, 2023.  *See generally id.*

Defendants filed a motion to dismiss on July 31, 2025, arguing that the Complaint fails to meet the "formidable" and "stringent" requirements for pleading securities fraud under the PSLRA. Dkt. 108 ("Motion to Dismiss") at 1.  On January 6, 2026, the Court issued its Order denying the Motion to Dismiss.  Dkt. 123.  The Court held that the Complaint adequately pled the elements of falsity, scienter and loss causation, and stated claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  *See generally id*.  Defendants respectfully submit that the Order did not apply the rigorous statement-by-statement, defendant-by-defendant analysis required by the PSLRA.

Gibson, Dunn & Crutcher LLP

### III.    LEGAL STANDARD

***Motion for Leave to File a Motion for Reconsideration.***  Civil Local Rule 7-9 permits a party to seek leave to file a motion for reconsideration of any interlocutory order at any time before final judgment.  Civil L. R. 7-9(a); *Yangtze Memory Techs., Inc. v. Strand Consult*, 2025 WL 2637501, at *2 (N.D. Cal. Sept. 12, 2025) (Wise, J.) ("A litigant dissatisfied with an interlocutory ruling may seek leave to file a motion for reconsideration under Civil Local Rule 7-9.").  A court may grant such motion for leave so long as the moving party shows (i) "reasonable diligence in bringing the motion," and (ii) "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order."  Civil L. R. 7-9(b).[1]  A "manifest failure" may exist when a court fails to properly apply a dispositive legal rule or test.  *Sandoval v. Barneburg*, 2013 WL 5961087, at *2 (N.D. Cal. Nov. 7, 2013); *In re Da Vinci Surgical Robot Antitrust Litig.*, 2024 WL 3641378, at *1 (N.D. Cal. July 30, 2024).  The court's determination on whether to grant leave to seek reconsideration is also informed by its inherent authority "to reconsider and revise its prior orders."  *Yangtze Memory Techs.*, 2025 WL 2637501, at *2 (citing Fed. R. Civ. P. 54(b)); *see also Williams v. Cnty. of Monterey*, 2021 WL 1966711, at *2 (N.D. Cal. May 17, 2021) ("The law is clear that the Court has inherent authority to modify its own order at any time before judgment.").

***PSLRA.***  The PSLRA, 15 U.S.C. § 78u-4, governs securities class actions alleging violations of Section 10(b) and Rule 10b-5.  Congress enacted the PSLRA to impose "uniform and more stringent pleading requirements to curtail the filing of meritless lawsuits."  H.R. CONF. REP. 104–369, at 41; *see also In re Clorox Co. Sec. Litig.*, 238 F. Supp. 2d 1139, 1143 (N.D. Cal. 2002) ("Congress concluded that Plaintiffs were using the threat of extensive discovery to force settlements on meritless claims, and sought to create a higher pleading bar in order to protect companies from the threat of pointless, expensive discovery."), *aff'd sub nom. Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125 (9th Cir. 2004).  The Ninth Circuit has recognized that a plaintiff's pleading burden under the PSLRA is "formidable."  *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,

---

[1] Civil L.R. 7-9(c) provides that the moving party may not repeat arguments previously made.  That must be read together with Local Rule 7-9(b)(3)'s requirement to establish "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court."  To the extent Defendants here repeat arguments previously made, it is to satisfy Civil L.R. 7-9(b)(3).

Gibson, Dunn & Crutcher LLP

DEFENDANTS' MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION
CASE NO. 5:25-cv-00642-NW

63 F.4th 747, 765 (9th Cir. 2023). The statute imposes exacting, element-specific pleading requirements. To plead falsity, a plaintiff must "specify ***each statement*** alleged to have been misleading, ***the reason or reasons why the statement is misleading***, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state ***with particularity*** all facts on which that belief is formed." § 78u-4(b)(1) (emphases added). To plead scienter, a plaintiff must "state ***with particularity*** facts giving rise to a strong inference" that Defendants knew that the challenged statements were false or misleading. § 78u-4(b)(2)(A) (emphasis added). These requirements are mandatory, and the court "shall" dismiss the complaint if a plaintiff fails to satisfy them. § 78u-4(b)(3)(A). On a motion to dismiss, "the Court must do a statement-by-statement analysis." *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *10 n.5 (N.D. Cal. Apr. 28, 2020) (citing *Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th. Cir. 2008)). The Court must also evaluate scienter allegations on a defendant-by-defendant basis. *In re PG&E Corp. Sec. Litig.*, 2025 WL 2781745, at *20 n.14 (N.D. Cal. Sept. 30, 2025) (plaintiff must "allege scienter on a defendant-by-defendant basis to 'inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007)); *In re Finisar Corp. Derivative Litig.,* 2012 WL 2873844, at *9 (N.D. Cal. July 12, 2012) (holding that "[P]laintiffs must plead scienter on an individualized, defendant-by-defendant basis; 'group pleading' is not permissible under the PSLRA.") (citation omitted); *In re Zoom Sec. Litig.*, 2022 WL 484974, at *2 (N.D. Cal. Feb. 16, 2022) ("Scienter must be alleged on a statement-by-statement, defendant-by-defendant basis."); *Fleming v. Impax Lab'ys Inc.*, 2018 WL 4616291, at *5 (N.D. Cal. Sept. 7, 2018) ("In evaluating a securities fraud complaint, the proper inquiry in the Ninth Circuit is a statement-by-statement analysis to determine if any particular utterance can be considered false or misleading.") (quotation omitted)).

## IV.    ARGUMENT

### A.    The Court's Loss Causation Holding Does Not Consider What Statements Were "Corrected."

The Complaint alleges five separate "partial corrective disclosures" from 2023 to 2025. ¶¶ 168-

Gibson, Dunn & Crutcher LLP

187.[2]  The Order addresses just one of them—the March 23, 2023 Hindenburg Report—and concludes that it revealed the "truth" about Block's compliance failures and allegedly inflated Cash App metrics as of that date.  Order at 14.  That holding warrants reconsideration for three reasons.  First, in finding that the Hindenburg Report disclosed the "truth" that "Block's compliance program permitted bad actors to create multiple accounts, which in turn inflated the user account metrics" (Order at 14), the Court ignored allegations that this same "truth" had already been publicly disclosed.  *See* ¶¶ 81, 83, 91, 92, 110 (describing pre-2023 public reports regarding illegal activity on Cash App); ¶ 108 (conceding Block disclosed in 2022 that users could have multiple accounts); *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 839 (9th Cir. 2022) ("a corrective disclosure 'must by definition reveal new information to the market that has not yet been incorporated into the [stock] price'") (quoting *In re BofI Holding, Inc. Securities Litigation*, 977 F.3d 781 (9th Cir. 2020).

Second, in finding that the Hindenburg Report established loss causation, the Court did not identify the purportedly false information that was corrected, as required.  *Id.* (corrective disclosure must "correct or revise" the challenged statements).  For example, none of the corrective disclosures revealed that Block had not "taken a number of proactive steps" in 2020 to prevent scammers (¶ 81, Statement 3); that Cash App had not "enhanced" its monitoring systems or was not partnering with law enforcement (¶ 92, Statement 6); or that Block had changed the way it calculated monthly actives or that the reported metrics were wrong (¶ 74, Statement 2).

Third, the Court failed to consider the four later-in-time alleged corrective disclosures—and in doing so, substantially and impermissibly elongated an already massively overbroad putative class period.  If the Court had done so, it should have concluded that none of the later stock drops are sufficiently alleged to have been "corrective."  Specifically, even if the Hindenburg Report revealed the "truth" about Block's alleged misstatements, later disclosures about the same facts could not constitute corrective disclosures as a matter of law.  *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th at 839 ("A corrective disclosure 'must by definition reveal new information to the market that has not yet been incorporated into the [stock] price.'") (quoting *In re BofI Holding, Inc. Securities Litigation*, 977

---

[2] Citations to " ¶ " or " ¶¶ " refer to paragraphs of the Complaint.

Gibson, Dunn & Crutcher LLP

F.3d 781 (9th Cir. 2020)); *see also Cai v. Visa, Inc.*, 24-cv-08220-NW, Dkt. 55 (N.D. Cal., Dec. 10, 2025) (disclosure that DOJ was going to sue Visa not a corrective disclosure when Visa had previously told the market that DOJ was investigating it) (Wise, J.).

Take, for example, the February 16, 2024 "corrective disclosure," an NBC News article claiming that Cash App "had no effective procedure to establish the identity of its customers" and that Block had "structured Cash App to 'misdirect[] the attention of regulators,' including by using small partner banks." ¶¶ 178-79. That is precisely what the Hindenburg Report said nearly a year earlier. *See* Dkt. 106-1 at 24-34, 46-50. Or consider the May 1, 2024, NBC News report quoting a former employee's claim that "everything in the compliance section was flawed." ¶ 181. Again, the Hindenburg Report already had reported similar concerns from former Block employees. Dkt. 106-1 at 39, 54.

Determining whether Plaintiff sufficiently pled loss causation with respect to each of the five alleged corrective disclosures is not merely an academic exercise. Allowing this case to proceed on the basis of five corrective disclosures—four of which were not analyzed at all in the Order—expands the relevant period in this case by ***more than two years***. If the Order stands, this inappropriately lengthy period will have serious implications on the scope of discovery, as well as the parties' arguments at class certification, summary judgment, and trial. Accordingly, the Defendants respectfully submit that reconsideration of the Order is appropriate to correct the clear error in failing to analyze whether each of the five alleged "corrective" disclosures is in fact "corrective"—especially the four not considered in the Order.

**B.    The Court Did Not Apply the PSLRA's Stringent Requirements for Pleading Falsity.**

The PSLRA's requirements for pleading that a challenged statement was false or misleading are "exacting," and a complaint must allege "specific facts" establishing falsity at the time each challenged statement was made. *Metzler*, 540 F.3d at 1070 (9th Cir. 2008). To plead that a statement was false at the time it was made, plaintiff must plead "facts indicating that [] the alleged 'true facts' arose ***before*** the allegedly misleading statements were made." *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1250 (N.D. Cal. 1998) (emphasis added; citation omitted); *see also In re Cloudera, Inc.*, 121 F.4th 1180, 1187 (9th Cir. 2024) (plaintiff "must explain what is false or misleading about the

purportedly fraudulent statement, and why it is false. . . . And to do so, it cannot rely on hindsight; rather, it must explain why the statements were false or misleading at the time they were made.") (internal quotation marks and citations omitted). "[W]ithout specific references to specific facts demonstrating that the statements at issue were false or misleading when made, allegations regarding adverse information supposedly known to defendants are merely 'speculation and conclusions drawn from hindsight.'" *Wenger*, 2 F. Supp. 2d at 1250 (citation omitted). The Order does not contain or reflect this analysis.

The Order's conclusion that every compliance-related statement made over a five-year period was misleading relies on Plaintiff's hindsight and conclusory allegations that are untethered to any time period, or are drawn from later events that had not occurred at the time many of the statements were made. Order at 9 (citing only ¶¶ 81, 110, 111, 127 in falsity analysis). That Cash App faced compliance issues at unspecified times during the purported five-year class period *does not* satisfy the PSLRA's requirement that plaintiffs "state with particularity" the facts establishing falsity *at the time the challenged statement was made*. *See* 15 U.S.C. § 78u-4(b)(1); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1086 (9th Cir. 2002) (no finding of falsity when complaint failed to allege facts indicating why purported misstatement was misleading each time it was made at various points during a 15-month class period), *abrogation on other grounds recognized by South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

The Order overlooks the clear absence of contemporaneous facts showing that each statement was false or misleading when made. For example, Plaintiff challenges Block's October 11, 2020 statement to the New York Times that "[w]e've taken a number of proactive steps and made [addressing scammers on Cash App] our top priority." ¶ 81 (Statement 3). Yet, the Order does not identify any alleged facts that existed as of October 2020, showing that Block had *not* taken such proactive steps. Rather, in finding falsity, the Order erroneously accepted Plaintiff's conclusory allegations that Block *at some undefined time during the five-year class period* had an "understaffed compliance team" and "lax onboarding protocols." Order at 9. The same is true of the August 15, 2021 statement to NBC News that Block had "enhanced [Cash App] systems to monitor and act upon deposits that we deem to be risky." ¶ 92 (Statement 6). The Order does not reference any factual allegations demonstrating that

at the time of this statement, Block had *not* enhanced its systems to monitor and act upon deposits deemed risky—because those facts are not pled.  And take Block's statement in its February 2020 10-K that "We have implemented an [anti-money laundering ("AML")] program designed to prevent our payments network from being used to facilitate money laundering, terrorist financing, and other illicit activity." ¶ 71 (Statement 1).  The Order does not identify any contemporaneous alleged facts contradicting this statement.  Nor does it consider that none of the FEs referenced in the Complaint are even alleged to have worked at Cash App until long *after* this statement was made.  *See* Complaint at 2.  The Court's Order concerning the falsity of Block's compliance-related statements warrants reconsideration.

**C.      The Court Did Not Apply the PSLRA's Stringent Requirements for Pleading Scienter.**

The PSLRA requires plaintiffs to plead, with particularity and on a defendant-by-defendant basis, facts giving rise to a strong and compelling inference that each defendant knew or was deliberately reckless in not knowing that the challenged statement was false or misleading *at the time it was made*.  § 78u-4(b)(2)(A); Motion to Dismiss at 16-24; Reply at 8-14.  While the Order acknowledges the heightened pleading standard for scienter, the Order does not apply it with the rigor the PSLRA demands—failing to identify *what* allegedly contradictory facts were known by which individual defendant, *how* they were communicated, and *when* they were known.  *See Metzler*, 540 F.3d at 1066 (9th Cir. 2008) ("[T]he complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements *when made*.") (emphasis added).  Instead, the Order infers scienter during the *entire five-year* putative class period based on Dorsey and Ahuja's senior leadership roles and generalized allegations that they received unspecified "reports" and "feedback" identifying compliance deficiencies.  The Order (and the Complaint) does not say (1) *what* information those reports and feedback provided, (2) *when* Dorsey and Ahuja supposedly received that information, or (3) *how* the information contradicted any specific statement either Defendant made.  Order at 12-14.  These facts are essential to pleading scienter, and it was clear error for the Order not to consider their absence.  *See, e.g., In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) (requiring plaintiff to plead the "specifics" of the allegedly contradictory information provided to defendants), *superseded*

Gibson, Dunn & Crutcher LLP

DEFENDANTS' MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION
CASE NO. 5:25-cv-00642-NW

*by statute on other grounds*; *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) ("[N]egative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient[.]").

The required statement-by-statement, defendant-by-defendant analysis would have confirmed that Plaintiff does not plead scienter as to any statement—let alone every single one of the 38 statements challenged over the five-year putative class period alleged in the Complaint. Take the statement "[w]e've taken a number of proactive steps and made [addressing scammers on Cash App] our top priority." ¶ 81 (Statement 3). The Order does not consider the Complaint's failure to plead facts showing that, when this statement was made in October 2020, Dorsey and/or Ahuja knew or deliberately ignored that Block had not taken "a number of proactive steps" and had not "made [addressing scammers on Cash App] our top priority." The same is true of the statement in August 2021, that Cash App had "enhanced [its] systems to monitor and act upon deposits that we deem to be risky." ¶ 92 (Statement 6). Facts showing that Dorsey and/or Ahuja knew this generic statement was false when made simply do not exist in the Order or the Complaint. Or consider the statement in May 2020 about the growth of "transacting active customers." ¶ 74 (Statement 2). Where are the well-pled facts showing that, as of May 2020, Dorsey and/or Ahuja had information showing this statement was inaccurate or misleading? Again, they simply aren't pled. Conclusory allegations that at unspecified times over a five-year period Dorsey and Ahuja received "findings [] via Board-level reports, internal compliance meetings, and employee feedback" say nothing about what Dorsey and Ahuja knew at the time of these (or any) challenged statements, let alone that they knew the statements were untrue or misleading. *See Metzler*, 540 F.3d at 1066 (plaintiff must plead scienter at the time the challenged statements were made.)

Because the Order did not analyze or determine whether the Complaint contains well-pled facts demonstrating that, at the time of each alleged misstatement, Dorsey and Ahuja received or deliberately ignored information showing each challenged statement was false or misleading, Defendants respectfully request the Court grant it leave to file a motion for reconsideration.

## V.     CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant leave to file

9

Gibson, Dunn &
Crutcher LLP

a motion for reconsideration of the Order.

Dated: January 27, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/  Brian M. Lutz*

Brian M. Lutz, SBN 255976
blutz@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8200

Jessica Valenzuela, SBN 220934
jvalenzuela@gibsondunn.com
Jeffrey Lombard, SBN 285371
jlombard@gibsondunn.com
Sofia Ritala, SBN 342253
sritala@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301
Telephone: 650.849.5300

Colin B. Davis, SBN 273942
cdavis@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
Telephone: 949.451.3800

*Attorneys for Defendants Block, Inc., Jack Dorsey, and Amrita Ahuja*

Gibson, Dunn &
Crutcher LLP

10