Richard M. Heimann (SBN 063607)
Katherine Lubin Benson (SBN 259826)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
rheimann@lchb.com
kbenson@lchb.com

Julie Goldsmith Reiser
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
jreiser@cohenmilstein.com

[Additional attorneys listed on signature page]
*Counsel for Lead Plaintiff the NYC Funds*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CORINNE GONSALVES, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BLOCK, INC., JACK DORSEY, and AMRITA AHUJA,<br><br>    Defendants. | Case No. 5:25-cv-00642-NW<br><br>CLASS ACTION<br><br>**THE NYC FUNDS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: June 30, 2026<br>Time: 9:00 a.m.<br>Courtroom: San Jose, Courtroom 3, 5th Floor<br>Judge: Hon. Noël Wise |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................ 1

STATEMENT OF THE ISSUES TO BE DECIDED .......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT BACKGROUND .......................................................................................... 2

    I.     Factual and Procedural Background ........................................................... 2

    II.    The Proposed Class Representative and Class Counsel ........................... 5

ARGUMENT ...................................................................................................................... 5

    I.     This Action Satisfies All Requirements of Rule 23(a) ............................... 5

        A.    The Proposed Class Is Sufficiently Numerous. ........................... 5

        B.    The Proposed Class Shares Common Questions of Law and Fact. ........................... 5

        C.    Lead Plaintiff's Claims Are Typical of the Class. ........................... 6

        D.    The Proposed Class Representative and Class Counsel Are Adequate. ........................... 7

    II.    The Predominance and Superiority Requirements of Rule 23(B)(3) Are Satisfied ................. 9

        A.    Predominance: Common Factual and Legal Questions Predominate. ........................... 9

            1.    Lead Plaintiff's Section 10(b) Claims Are Entitled to a Presumption of Reliance Under *Basic v. Levinson* ........................... 9

                a.    First *Cammer* Factor: High Average Trading Volume. ........................... 10

                b.    Second *Cammer* Factor: Securities Analyst Coverage. ........................... 10

                c.    Third *Cammer* Factor: Listing and Market Makers. ........................... 11

                d.    Fourth *Cammer* Factor: Eligibility to File Form S-3. ........................... 11

                e.    Fifth *Cammer* Factor: Reaction of Security to New Company-Specific Information. ........................... 12

                f.    First *Krogman* Factor: Large Market Capitalization. ........................... 12

                g.    Second *Krogman* Factor: Narrow-Bid Ask Spread. ........................... 12

                h.    Third *Krogman* Factor: Large Public Float and Options Trading. ........................... 13

        B.    Superiority: A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action. ........................... 14

    III.   Proposed Class Counsel Satisfy Rule 23(g) ........................... 15

CONCLUSION ........................... 15

THE NYC FUNDS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:25-CV-00642-NW

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A.B. v. Haw. State Dep't of Educ.*,
30 F.4th 828 (9th Cir. 2022) ................................................................................................. 7

*In re Am. Realty Cap. Props., Inc. Litig.*,
No. 1:15-mc-40 (S.D.N.Y. Jan. 22, 2020) ............................................................................ 8

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .............................................................................................................. 9

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S 455 (2013) ............................................................................................................... 9

*Angley v. UTi Worldwide Inc.*,
311 F. Supp. 3d 1117 (C.D. Cal. 2018) .............................................................................. 10

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .............................................................................................................. 9

*In re BofI Holding, Inc. Sec. Litig.*,
No. 3:15-cv-2324-GPC-KSC, 2021 WL 3742924 (S.D. Cal. Aug. 24, 2021) ................. 9, 13

*Borteanu v. Nikola Corp.*,
348 F.R.D. 239 (D. Ariz. 2025) .......................................................................................... 14

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
No. 19-cv-6361-RS, 2022 WL 2954937 (N.D. Cal. July 26, 2022) ...................................... 7

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) ............................................................................. 10, 11, 12

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
No. 18-cv-4844-BLF, 2022 WL 1459567 (N.D. Cal. May 9, 2022) ..................................... 7

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ............................................................................................................... 13

*In re Countrywide Sec. Litig.*,
No. 07-cv-5295 (C.D. Cal. Jan. 4, 2011 and Mar. 4, 2011) .................................................. 8

*El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*,
No. 21-cv-2770-WJM-SBP, 2025 WL 853296 (D. Colo. Jan. 9, 2025) ............................... 8

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ................................................................................................. 7

**TABLE OF AUTHORITIES**
(continued)

Page

*Epstein v. MCA Inc.*,
50 F.3d 644 (9th Cir. 1995), *rev'd on other grounds sub nom.*
*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996)...................................................... 1

*In re EQT Corp. Sec. Litig.*,
No. 2:19-cv-754-RJC, 2022 WL 3293518 (W.D. Pa. Aug. 11, 2022) ...................................... 6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)................................................................................................................. 9

*In re FibroGen Sec. Litig.*,
No. 21-cv-2623-EMC, 2024 WL 1064665 (N.D. Cal. Mar. 11, 2024) ...................................... 10, 11, 13

*Gonzalez v. U.S. Immigr. & Customs Enf't*,
975 F.3d 788 (9th Cir. 2020) ................................................................................................ 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)................................................................................................................. 9

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ................................................................................................ 7

*Hayes v. MagnaChip Semiconductor Corp.*,
No. 14-cv-1160-JST, 2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) ...................................... 11

*Hilario v. Allstate Ins. Co.*,
642 F. Supp. 3d 1048 (N.D. Cal. 2022) ................................................................................ 5

*In re Honest Co. Sec. Litig.*,
No. 2:21-cv-7405-MCS-PLA, 2023 WL 3190506 (C.D. Cal. May 1, 2023) ............................ 14

*Jeruchim v. J.M. Smucker Co.*,
No. 22-cv-6913-WHO, 2026 WL 178565 (N.D. Cal. Jan. 22, 2026)...................................... 5

*Johnson v. City of Grants Pass*,
50 F.4th 787 (9th Cir. 2022) *amended and superseded on denial of reh'g en banc on
other grounds*, 72 F.4th 868 (9th Cir. 2023), *rev'd and remanded on other grounds sub
nom. City of Grants Pass, Or. v. Johnson*, 603 U.S. 520 (2024)............................................ 5

*Junge v. Geron Corp.*,
No. 20-cv-547-WHA, 2022 WL 1002446 (N.D. Cal. Apr. 2, 2022)........................................ 12

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ............................................................................................ 7

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001) ........................................................................................ 10, 12, 13

THE NYC FUNDS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:25-CV-00642-NW

**TABLE OF AUTHORITIES**
(continued)

Page

*Lamartina v. VMware, Inc.*,
No. 5:20-cv-2182-EJD, 2024 WL 3286059 (N.D. Cal. July 2, 2024) ...................................... 15

*Leone v. ASP Isotopes Inc.*,
No. 24-cv-9253-CM, 2025 WL 3484821 (S.D.N.Y. Dec. 4, 2025) ......................................... 7

*Malriat v. QuantumScape Corp.*,
No. 3:21-cv-58-WHO, 2022 WL 17974629 (N.D. Cal. Dec. 19, 2022)........................... 12, 13

*Nguyen v. Radient Pharms. Corp.*,
287 F.R.D. 563 (C.D. Cal. 2012) ........................................................................................ 14

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*,
No. 3:11-cv-433 (M.D. Tenn. Jan. 30, 2020) ....................................................................... 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ................................................................................................ 6

*Petrie v. Elec. Game Card, Inc.*,
308 F.R.D. 336 (C.D. Cal. 2015) ........................................................................................ 13

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
No. 19-cv-4744-WHA, 2021 WL 229310 (N.D. Cal. Jan. 21, 2021)....................................... 11

*Purple Mountain Tr. v. Wells Fargo & Co.*,
No. 18-cv-3948-JD, 2022 WL 3357835 (N.D. Cal. Aug. 15, 2022) .................................. 10, 11, 13, 14

*Sayce v. Forescout Techs., Inc.*,
754 F. Supp. 3d 878 (N.D. Cal. 2024) ............................................................................ 6, 14, 15

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
No. 22-cv-3811-TLT, 2025 WL 1243818 (N.D. Cal. Apr. 25, 2025) ..................................... 10

*Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*,
No. 20-cv-4737-RS, 2023 WL 3569981 (N.D. Cal. May 19, 2023) ........................................ 8

*Todd v. STAAR Surgical Co.*,
No. 14-cv-5263-MWF-RZ, 2017 WL 821662 (C.D. Cal. Jan. 5, 2017)................................... 11

*In re Twitter Inc. Sec. Litig.*,
326 F.R.D. 619 (N.D. Cal. 2018)......................................................................................... 6

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ............................................................................................. 14

*Weston v. DocuSign, Inc.*,
348 F.R.D. 354 (N.D. Cal. 2024)...................................................................................... 13, 14

THE NYC FUNDS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:25-CV-00642-NW

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Court Rules**

Fed. R. Civ. P. 23 ................................................................................................ 6, 15

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 30, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Noël Wise, United States District Judge for the Northern District of California, in the San Jose Division, Courtroom 3, 5th Floor, Lead Plaintiff the NYC Funds[1] will, and hereby does, move the Court pursuant to Federal Rule of Civil Procedure 23 for entry of an order: (1) certifying the Class (defined below) under Rule 23(a) and Rule 23(b)(3); (2) appointing the NYC Funds as Class Representative; and (3) appointing Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Class Counsel pursuant to Rule 23(g).

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities ("MPA"), the declarations, exhibits, and expert report submitted herewith, the pleadings and record on file in this action, and such further evidence and argument as the Court may consider.[2]

## STATEMENT OF THE ISSUES TO BE DECIDED

The issues to be decided on this Motion are:

1.    Whether the proposed Class should be certified.

2.    Whether the NYC Funds should be appointed as Class Representative.

3.    Whether Lieff Cabraser and Cohen Milstein should be appointed as Class Counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 "like a glove." *Epstein v. MCA Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996). This case is no exception. Defendants' violations of the federal securities

---

[1] Lead Plaintiff NYC Funds is composed of Teachers' Retirement System of the City of New York, New York City Employees' Retirement System, New York City Fire Pension Fund, New York City Board of Education Retirement System, Police Superior Officers' Variable Supplements Fund, Police Officers' Variable Supplements Fund, Firefighters' Variable Supplements Fund, Fire Officers' Variable Supplements Fund, New York City Fire Department Life Insurance Fund, and Teachers' Retirement System Variable A.

[2] In the MPA, emphasis in quotations is added and internal citations and quotation marks are omitted, except as otherwise noted. References to "Ex. __" are to exhibits to the accompanying Declaration of Julie Goldsmith Reiser ("Reiser Declaration" or "Reiser Decl."). References to "¶ __" are to the Amended Consolidated Class Action Complaint (the "Complaint" or "Compl."), Dkt. 106. References to "Feinstein Rpt." are to the accompanying Expert Report of Steven P. Feinstein, Ph.D., CFA, which is attached as Exhibit A to the Reiser Declaration.

laws injured Lead Plaintiff and many thousands of proposed Class members[3] in the same manner. Thus, Rule 23(a)'s requirements are easily satisfied here:

**Numerosity.** Many thousands of investors acquired many millions of shares of Block's nationally traded Class A common stock during the Class Period.

**Commonality and Typicality.** Defendants made the same false and misleading statements and omitted the same material facts to all of Block's investors. Lead Plaintiff's claims arise from the same course of conduct and rest on the same legal theories as those of the Class.

**Adequacy.** Lead Plaintiff is a sophisticated institutional investor that has demonstrated its commitment to zealous advocacy on behalf of the Class and will continue to do so.

Rule 23(b)(3)'s requirements are likewise satisfied:

**Predominance.** The central elements of Lead Plaintiff's claims, including falsity and materiality, can be proven with common evidence. Further, reliance will be presumed for Lead Plaintiff's Section 10(b) claims and the related Section 20(a) claims.

**Superiority.** Defendants' conduct damaged thousands of geographically dispersed investors, making a class action the superior method for adjudicating the claims and defenses here in a judicially efficient manner.

Accordingly, the Court should grant Lead Plaintiff's motion to (1) certify the Class; (2) appoint the NYC Funds as Class Representative; and (3) appoint Lieff Cabraser and Cohen Milstein as Class Counsel.

**RELEVANT BACKGROUND**

**I.    Factual and Procedural Background**

Block, Inc. is a financial technology company co-founded in 2009 by Defendant Jack Dorsey. ¶ 12. Its flagship consumer product, Cash App, is a mobile financial platform offering peer-to-peer payments, banking, investing, cryptocurrency, tax filing, and small-dollar lending. ¶ 24.

During the Class Period, Cash App's growth was the engine of Block's valuation, ¶ 25, and Cash

---

[3] The proposed Class consists of all persons and entities who purchased or acquired Block's Class A publicly traded common stock between February 26, 2020 to May 1, 2025, inclusive (the "Class Period"), and were damaged thereby (the "Class"). Excluded from the Class are (i) Defendants herein; the officers and directors of Block, Inc., during the Class Period; (ii) members of their immediate families; (iii) their legal representatives, heirs, successors or assigns; (iv) the Court; and (v) any entity in which any Defendant has or had a controlling interest. ¶ 195.

THE NYC FUNDS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:25-CV-00642-NW

App user acquisition was Block's strategic "North Star," ¶ 27. From December 2019 to December 2023, Block reported Cash App's monthly active users grew from 24 million to 56 million. ¶ 2. By 2024, Cash App had surpassed Square as Block's primary source of revenue. ¶ 25. As a result, Cash App's user metrics became central to Block's market valuation. Defendants consistently highlighted those metrics in earnings calls, investor presentations, and SEC filings, knowing investors relied on them to assess Block's growth trajectory and future profitability. ¶ 4.

But Cash App's explosive growth was not what it seemed. It was fueled in substantial part by fraudulent, duplicate, and illicit accounts made possible by systemic compliance failures. ¶¶ 3, 5. Block's know-your-customer ("KYC"), anti-money laundering ("AML"), and sanctions-screening controls were grossly deficient and had been for years. ¶ 39(a)-(b). The Company did not require meaningful identity verification, allowed banned users to create virtually unlimited new accounts, and failed to prevent widespread abuse of the platform. ¶¶ 34–39. Instead, Block deliberately prioritized making Cash App a "frictionless" user experience. ¶¶ 3, 29. As a result, Cash App's user metrics were inflated by as much as 30% due to the inclusion of accounts that were fake, duplicative, or tied to illicit activity. ¶¶ 4–5, 29.

Midway through the Class Period, Block compounded the deception by changing how it calculated its key user metric for Cash App. The Company shifted from reporting "transacting active customers" (individual customers) to reporting "transacting actives" (accounts). ¶¶ 94–95. Block misled investors about this change and continued to present year-over-year growth figures that compared the new account-based metric to prior customer-based figures, further misleading investors about the Company's true growth trajectory. ¶¶ 96–98, 107, 119, 160, 164–67.

At the same time, Defendants reassured investors that Block maintained robust systems to prevent fraud, money laundering, and other illicit activity. ¶¶ 43, 63. In reality, Block's compliance infrastructure was not up to that task—instead, it was chronically under-resourced, fundamentally flawed, and reliant on substandard systems and processes. ¶¶ 3, 5, 32–33. Over time, whistleblowers, internal reports, outside consultants, and regulators identified serious and persistent compliance failures that enabled widespread fraud on the Cash App platform. ¶¶ 41–42, 45, 64–66.

Block's senior leadership, including Defendants Dorsey and Ahuja, were repeatedly informed of these compliance breakdowns. *See* Compl. Parts IV.C & VI. Board-level risk reports, internal audits, and

THE NYC FUNDS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:25-CV-00642-NW

external compliance reviews documented escalating volumes of suspicious activity reports, persistent KYC failures, and inadequate transaction-monitoring resources. *See id.* In 2023, they also received two independent compliance reviews, one commissioned by Cash App leadership and another by Block's senior leadership, both concluding that Block lacked an adequate compliance program. ¶ 42. Despite this knowledge, Defendants publicly denied or downplayed the problems. *Id.*

The truth began to emerge on March 23, 2023, when Hindenburg Research published a report titled "*Block: How Inflated User Metrics and 'Frictionless' Fraud Facilitation Enabled Insiders to Cash Out Over $1 Billion.*" ¶¶ 44–45. The report, based on dozens of interviews with former employees, partners, and industry experts, alleged Cash App's user metrics were significantly inflated, that Block facilitated fraud to drive growth, and that it ignored widespread complaints about illicit activity on Cash App. ¶¶ 45–46. Former employees estimated 40% to 75% of reviewed accounts were fake, fraudulent, or duplicative. ¶ 49. Following the report's publication, Block's stock price fell nearly 15%. ¶ 53. One week later, Block disclosed user figures revealing that the number of reported Cash App users had been previously overstated by 15 to 30%. ¶ 56.

Additional corrective disclosures followed. On August 3, 2023, Block disclosed that it had received inquiries from the SEC and DOJ in connection with the Hindenburg Report, triggering another nearly 14% stock decline. ¶ 59. In February and May 2024, NBC News published investigative reports based on whistleblower disclosures detailing pervasive compliance failures, including allegations that Cash App knowingly facilitated transactions involving sanctioned entities. ¶ 60, 62. Those reports prompted additional stock declines of more than 5% and 8%, respectively. *Id.*

After the Hindenburg Report was published, regulators began investigating Block's compliance with state and federal AML laws, forcing Block to add significant compliance "friction" to its onboarding process for the first time. ¶ 64. In early 2025, the regulators imposed financial consequences. *See* Compl. Part IV.G. The Company entered into multiple consent orders and paid hundreds of millions of dollars in penalties to state and federal authorities for persistent AML, KYC, and sanctions violations. *Id.* Once Block began implementing compliance systems, the Company's growth stagnated: Cash App saw five consecutive quarters of flat user growth. ¶ 67. On May 1, 2025, Block missed its first-quarter earnings target and reduced its profit outlook, with analysts attributing the miss to stagnant user growth. ¶ 68. The stock fell

20%. *Id.* From its Class Period high of $289 per share, Block's stock collapsed to $46 per share—an 84% decline. ¶¶ 6, 68.

On June 18, 2025, Lead Plaintiff filed the Complaint, asserting claims under Section 10(b) of the Securities Exchange Act (the "Exchange Act") and Rule 10b-5 against Block, Dorsey, and Ahuja, and under Section 20(a) against Dorsey and Ahuja. Dkt. 106. On July 30, 2025, Defendants moved to dismiss the Complaint. Dkt. 108. On January 6, 2026, this Court denied the motion to dismiss in full. Dkt. 123.

## II.  The Proposed Class Representative and Class Counsel

On April 30, 2025, the Court appointed the NYC Funds as Lead Plaintiff. Dkt. 102. The NYC Funds now seek appointment as Class Representative. The NYC Funds are a group of retirement pension funds based in New York City that collectively manage more than $316 billion in assets. During the Class Period, the NYC Funds purchased Block Class A common stock at artificially inflated prices and suffered substantial losses as a result of the securities law violations alleged in this action.

The Court also previously appointed Lieff Cabraser and Cohen Milstein as Lead Counsel. Dkt. 102. Lead Counsel now seek appointment as Class Counsel.

## ARGUMENT

## I.  This Action Satisfies All Requirements of Rule 23(a)

### A.  The Proposed Class Is Sufficiently Numerous.

"[C]ourts within the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members." *Jeruchim v. J.M. Smucker Co.*, No. 22-cv-6913-WHO, 2026 WL 178565, at *8 (N.D. Cal. Jan. 22, 2026) (quoting *Hilario v. Allstate Ins. Co.*, 642 F. Supp. 3d 1048, 1059 (N.D. Cal. 2022)). Here, an average of 58 million shares of Block Class A common stock changed hands every week of the approximately five-year Class Period, a total of 15.1 billion shares traded during the Class Period. Feinstein Rpt. ¶¶ 58, 60. Additionally, at least 3,580 major institutions owned Block common stock during the Class Period. *See id.* ¶ 71. The Class is therefore so numerous that joinder of all members would be impracticable, satisfying the numerosity requirement.

### B.  The Proposed Class Shares Common Questions of Law and Fact.

"A class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class." *Johnson v. City of Grants Pass*, 50 F.4th 787, 804 (9th Cir. 2022) *amended and*

THE NYC FUNDS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:25-CV-00642-NW

*superseded on denial of reh'g en banc on other grounds*, 72 F.4th 868 (9th Cir. 2023), *rev'd and remanded on other grounds sub nom. City of Grants Pass, Or. v. Johnson*, 603 U.S. 520 (2024). "The existence of shared legal issues with divergent factual predicates is sufficient" to satisfy Rule 23's commonality requirement. *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020). Demonstrating commonality requires a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022). Securities fraud cases "often present a 'paradigmatic common question of law or fact' of whether a company omitted material information or made misrepresentations that inflated the price of its [securities]." *In re EQT Corp. Sec. Litig.*, No. 2:19-cv-754-RJC, 2022 WL 3293518, at \*20 (W.D. Pa. Aug. 11, 2022).

Here, the common questions include: (a) whether Defendants violated the Exchange Act; (b) whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (c) whether Defendants knew or recklessly disregarded that their statements and omissions were false and misleading; (d) whether the price of Block Class A common stock was artificially inflated; (e) whether Defendants' conduct caused the members of the Class to sustain damages; and (f) the extent of damages. The resolution of these common questions will drive the outcome of this litigation, and Class members would have to address the same issues if the claims were pursued individually. These questions depend on a "core of factual and legal issues" common to the Class as a whole and therefore satisfy the commonality requirement. *Sayce v. Forescout Techs., Inc.*, 754 F. Supp. 3d 878, 901 (N.D. Cal. 2024); *see also, e.g.*, *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 626 (N.D. Cal. 2018) (finding similar questions "sufficient to fulfill the commonality requirement").

### C.     Lead Plaintiff's Claims Are Typical of the Class.

Rule 23(a)(3)'s typicality requirement permits certification when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by

the same course of conduct.'" *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Under the rule's "permissive" standards, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). "[M]inor factual differences among class members, such as variations in the dates on which they acquired [the defendant's] stock, the prices they paid, or the manner in which they purchased the stock, do not defeat typicality so long as their injuries stem from the same alleged misrepresentations and fraudulent course of conduct." *Leone v. ASP Isotopes Inc.*, No. 24-cv-9253-CM, 2025 WL 3484821, at *28 (S.D.N.Y. Dec. 4, 2025); *see also, e.g.*, *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, No. 18-cv-4844-BLF, 2022 WL 1459567, at *4 (N.D. Cal. May 9, 2022) (finding lead plaintiff's claims "reasonably coextensive with those of the rest of the class" and therefore typical under Rule 23(a)).

Here, Lead Plaintiff's claims are typical of, if not virtually identical to, the claims of other members of the Class; arise from the same events; invoke the same legal theories; are subject to the same defenses; and will be proven with the same evidence. Like other members of the Class, Lead Plaintiff purchased Block Class A common stock at artificially inflated prices and suffered losses because of Defendants' misconduct. Accordingly, Lead Plaintiff and the other Class members share identical interests in holding Defendants accountable and maximizing investors' recovery, satisfying Rule 23(a)(3).

### D.      The Proposed Class Representative and Class Counsel Are Adequate.

To meet Rule 23(a)(4)'s requirement under that class representatives "fairly and adequately protect the interests of the class," the district court must resolve two questions: "(1) [D]o the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). "[T]he evidentiary burden upon plaintiffs is low; a class representative will be deemed inadequate only if startlingly unfamiliar with the case." *Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-cv-6361-RS, 2022 WL 2954937, at *4 (N.D. Cal. July 26, 2022). A proposed class representative must merely "present some affirmative evidence that they are familiar with this case, the claims within it, and the role of a class representative." *Id.*

Lead Plaintiff is an outstanding representative for the proposed Class. Most importantly, Lead

Plaintiff's interests are entirely aligned with the Class members' interests, because they all acquired and held Block Class A common stock during the Class Period and were damaged as a result of the same allegedly false and misleading statements and omissions by Defendants. Ex. B ¶ 5.

Additionally, Lead Plaintiff has a meaningful financial stake in this litigation and has demonstrated its ability to vigorously litigate this matter to protect the Class. As explained in its declaration, Lead Plaintiff understands the requirements and responsibilities of serving as a Class Representative, as it has extensive experience serving as Class Representative in other securities fraud class actions and, in that role, has secured significant recoveries for shareholders. *See id.* ¶¶ 9-10; *see also, e.g.*, *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-40 (S.D.N.Y. Jan. 22, 2020), ECF No. 1309 ($1.025 billion settlement fund); *In re Countrywide Sec. Litig.*, No. 07-cv-5295 (C.D. Cal. Jan. 4, 2011 and Mar. 4, 2011), ECF Nos. 1017, 1063 ($624 million settlement fund); *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, No. 3:11-cv-433 (M.D. Tenn. Jan. 30, 2020), ECF No. 429 ($53 million settlement fund).

Lead Plaintiff has also vigorously litigated the case to date. It has reviewed and approved significant pleadings and filings, including the Complaint and this motion; reviewed the Court's decision denying Defendants' motion to dismiss; implemented and overseen document preservation efforts; coordinated with counsel and custodians concerning the collection and production of documents and electronically stored information; and participated in discovery planning, including the preparation of written discovery and the review of discovery served on Defendants. *See* Ex. B ¶ 8. Lead Plaintiff will continue to monitor and assess the progress of this litigation and work with counsel to maximize the Class's recovery.

Finally, Lead Plaintiff has demonstrated its adequacy by retaining counsel with the qualifications, experience, and demonstrated ability to successfully litigate this action on behalf of the Class. *See id.* ¶¶ 7, 11; Reiser Decl. ¶¶ 5-7. Lieff Cabraser and Cohen Milstein are among the preeminent securities class action law firms in the country, having recovered billions of dollars in some of the largest and most complex securities class actions. *See* Ex. C; Ex. D. For these reasons, Lead Counsel have been appointed Class Counsel in this Circuit and throughout the country. *See, e.g.*, *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, No. 20-cv-4737-RS, 2023 WL 3569981, at *7-10 (N.D. Cal. May 19, 2023) (certifying class and appointing Cohen Milstein as class counsel in securities class action); *El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*, No. 21-cv-2770-WJM-SBP, 2025 WL 853296, at

- 8 -

*5 (D. Colo. Jan. 9, 2025) (same); *In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-cv-2324-GPC-KSC, 2021 WL 3742924, at *10 (S.D. Cal. Aug. 24, 2021) (certifying class and appointing Lieff Cabraser as class counsel in securities class action).

## II.    The Predominance and Superiority Requirements of Rule 23(B)(3) Are Satisfied

This case also satisfies Rule 23(b)(3)'s requirements that (1) common questions of law or fact predominate over individual questions, and (2) a class action is superior to alternative methods of resolving the dispute. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

### A.    Predominance: Common Factual and Legal Questions Predominate.

Predominance under Rule 23(b)(3) "is a test readily met in certain cases alleging consumer or securities fraud." *Id.* at 625. The Class's claims all arise from the same course of conduct and will be proven through common evidence, and the Class's injuries are all predicated on the same artificial inflation and subsequent decline in Block's share price after the truth was exposed. *See supra* § I.B. Common questions further predominate in this action because the Class is entitled to a presumption of reliance for Lead Plaintiff's Section 10(b) claims. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (in federal securities fraud actions, "[w]hether common questions of law or fact predominate . . . often turns on the element of reliance"). Courts may employ a rebuttable presumption of reliance for securities class actions where there has been "fraud on the market." *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988).

#### 1.    Lead Plaintiff's Section 10(b) Claims Are Entitled to a Presumption of Reliance Under *Basic v. Levinson*.

The predominance requirement is satisfied here because Lead Plaintiff can rely on the fraud-on-the-market presumption of reliance for its Section 10(b) claims. *See Basic*, 485 U.S. at 241; *Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"), 573 U.S. 258, 263–64, 268–69 (2014); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S 455, 460–62 (2013). Under the fraud-on-the-market presumption, reliance on material public misrepresentations is presumed for Section 10(b) claims whenever an "investor buys or sells [securities] at the market price" because "the market price of shares traded on well-developed markets reflects all publicly available information, and hence any material misrepresentations." *Halliburton II*, 573 U.S. at 268 (quoting *Basic*, 485 U.S. at 246–47). In determining whether a market for a security is well developed—such that it demonstrates "market efficiency"—courts in

THE NYC FUNDS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:25-CV-00642-NW

the Ninth Circuit rely principally on the five factors enumerated in *Cammer v. Bloom*, 711 F. Supp. 1264, 1285-87 (D.N.J. 1989): (1) the security's average weekly trading volume; (2) coverage of the security in securities analyst reports; (3) the number of market makers in the security; (4) the issuing company's eligibility to file a registration statement on Form S-3; and (5) whether the security's price reacts to unexpected corporate events or financial releases. *See SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, No. 22-cv-3811-TLT, 2025 WL 1243818, at *6 (N.D. Cal. Apr. 25, 2025). These factors are an "analytical tool, not a checklist." *Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117, 1121 (C.D. Cal. 2018). Courts also consider the factors in *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001): (1) the company's market capitalization; (2) the security's bid-ask spread; and (3) the size of the public float. *See SEB Inv.*, 2025 WL 1243818, at *6. Here, both the *Cammer* factors and the *Krogman* factors support market efficiency.

### a. First *Cammer* Factor: High Average Trading Volume.

Throughout the Class Period, Block Class A common stock traded actively, with an average weekly trading volume of approximately 58 million shares, or 12.3% of shares outstanding, higher than the average security traded on the NYSE or NASDAQ. Feinstein Rpt. ¶ 60; *see In re FibroGen Sec. Litig.*, No. 21-cv-2623-EMC, 2024 WL 1064665, at *9 (N.D. Cal. Mar. 11, 2024) ("[A]verage weekly trading of two percent or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one" and "one percent would justify a substantial presumption." (quoting *Cammer*, 711 F. Supp. at 1286)). Consistent with *Cammer*, economic theory, and empirical research, this high, active trading volume is strong evidence of the efficiency of the market for Block Class A common stock over the course of the Class Period. *See* Feinstein Rpt. ¶¶ 58-61.

### b. Second *Cammer* Factor: Securities Analyst Coverage.

During the Class Period, analysts from at least 64 separate firms followed Block, and at least 3,235 analyst reports covering Block were published. *See* Feinstein Rpt. ¶¶ 64-66. Block was also the subject of at least 7,051 unique news articles. *Id.* ¶ 72. This extensive coverage compellingly shows market efficiency. *Id.* ¶¶ 69, 74; *see, e.g.*, *Purple Mountain Tr. v. Wells Fargo & Co.*, No. 18-cv-3948-JD, 2022 WL 3357835, at *4 (N.D. Cal. Aug. 15, 2022) (coverage by analyst firms "indicate[d] that 'the market would rapidly and fully incorporate information into the stock price because analyst reports would likely be closely reviewed'

by investors"); *In re FibroGen*, 2024 WL 1064665, at \*9 ("Courts have found this factor supports market efficiency with as few as four to seven analysts covering a particular stock.").

### c.   Third *Cammer* Factor: Listing and Market Makers.

Market makers are financial intermediaries who trade in a particular security, standing ready to buy from and sell to individual investors, institutions, and other market makers. *See Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-1160-JST, 2016 WL 7406418, at \*6 (N.D. Cal. Dec. 22, 2016) (the third factor is the presence of "market makers" or "'individuals [who] would react swiftly to company news and reported financial results by buying or selling [the security] and driving it to a changed price level.'"). A large number of market makers indicates market efficiency because it implies that many market participants are trading that particular security and generally provides a high degree of liquidity and lower transaction costs. *In re FibroGen*, 2024 WL 1064665, at \*9. Here, during the Class Period, there were at least 225 market makers for Block Class A common stock, Feinstein Rpt. ¶ 80, which is strong evidence of market efficiency, *see Cammer*, 711 F. Supp. at 1293 ("For over the counter markets without volume reporting, the number of market makers is probably the best single criterion. Ten market makers for a security would justify a substantial presumption that the market for the security is an efficient one . . . ."). Additionally, Block's Class A Common Stock traded on the New York Stock Exchange, "a quintessentially efficient market." *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. 19-cv-4744-WHA, 2021 WL 229310, at \*6 (N.D. Cal. Jan. 21, 2021). This fact "strongly indicates that [Block stock] trades in an efficient market." *Purple Mountain Tr.*, 2022 WL 3357835, at \*5; *cf. Todd v. STAAR Surgical Co.*, No. 14-cv-5263-MWF-RZ, 2017 WL 821662, at \*6 (C.D. Cal. Jan. 5, 2017) ("federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency").

### d.   Fourth *Cammer* Factor: Eligibility to File Form S-3.

Block satisfied the criteria for Form S-3 eligibility, which is further confirmatory evidence of market efficiency during the Class Period. Throughout the Class Period, there is no evidence that Block failed to file relevant documents in a timely manner, failed to pay dividends, or defaulted on its debts, and therefore were eligible to file a Form S-3. *See* Feinstein Rpt. ¶¶ 86-91; *In re FibroGen*, 2024 WL 1064665, at \*10 ("[W]hen an issuer of securities meets Form S-3's requirements, the market for its securities is likely one that quickly assimilates material public information into the price because the market is well developed and

trading is robust.").

### e.      Fifth *Cammer* Factor: Reaction of Security to New Company-Specific Information.

"[O]ne of the most convincing ways to demonstrate [market] efficiency [is] to illustrate, over time, a cause and effect relationship between company disclosures and resulting movements in [security] price." *Cammer*, 711 F. Supp. at 1291. Courts have held that where the results of an event study show price changes that are statistically significant, a cause-and-effect relationship exists between the release of information pertaining to the company and the price of the company's securities. *See, e.g.*, *Malriat v. QuantumScape Corp.*, No. 3:21-cv-58-WHO, 2022 WL 17974629, at *12 (N.D. Cal. Dec. 19, 2022) ("Courts regularly accept experts' event studies to support market efficiency analyses at the class certification stage."). Here, an event study by Lead Plaintiff's expert provides compelling evidence of Block Class A common stock price reactions to Company earnings announcements, *see* Feinstein Rpt. § VIII, which strongly indicates that Block Class A common stock traded in an efficient market.

### f.      First *Krogman* Factor: Large Market Capitalization.

"Market capitalization, calculated as the number of shares multiplied by the prevailing share price, may be an indicator of market efficiency because there is a greater incentive for [securities] purchasers to invest in more highly capitalized corporations." *Krogman*, 202 F.R.D. at 478. Here, Block's market capitalization averaged $51.3 billion throughout the Class Period. *See* Feinstein Rpt. ¶ 94. In fact, Block was, on average, larger than 98.5% of all publicly traded companies listed on the combined NYSE and NASDAQ exchanges, as measured by market capitalization. *Id.* This is further evidence of market efficiency. *See id.* ¶¶ 93-95; *see also, e.g.*, *Junge v. Geron Corp.*, No. 20-cv-547-WHA, 2022 WL 1002446, at *4–5 (N.D. Cal. Apr. 2, 2022) (average market capitalization in the 35th to 46th percentile of the combined NYSE and NASDAQ markets supported market efficiency).

### g.      Second *Krogman* Factor: Narrow-Bid Ask Spread.

"The bid-ask spread is the difference between the price at which investors are willing to buy the [security] and the price at which current [securities holders] are willing to sell their shares," with narrower bid-ask spreads associated with more efficient markets. *Krogman*, 202 F.R.D. at 478. The average percentage bid-ask spread for Block Class A common stock in each month throughout the Class Period was

0.02%, or in dollar terms, $0.03 per share. Feinstein Rpt. ¶¶ 100-01. This is well below the average month-end bid-ask spread over the course of the Class Period for all stocks traded on U.S. exchanges, which was 0.62% in percentage terms and $0.20 per share in dollar terms. *Id.* This narrow bid-ask spread further indicates market efficiency. *See id.* ¶¶ 99-102; *see also, e.g.*, *Malriat*, 2022 WL 17974629, at *13 (certifying class and finding that bid-ask spread between 0.02% and 0.06% during the class period supported efficiency); *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 349, 356–57 (C.D. Cal. 2015) (certifying class and finding that bid-ask spread of 2.91% supported efficiency).

### h.      Third *Krogman* Factor: Large Public Float and Options Trading.

In determining efficiency, courts also consider public float, *i.e.*, "the percentage of shares held by the public, rather than insiders." *Krogman*, 202 F.R.D. at 478. "Because insiders may have private information that is not yet reflected in [security] prices, the prices of [securities] that have greater holdings by insiders are less likely to accurately reflect all available information about the security." *Id.* On average during the Class Period, approximately 99.1% of Block's Class A common stock was held by non-insiders, meaning that insiders held only approximately 0.9% of Block's outstanding Class A shares. Feinstein Rpt. ¶ 97. This large percentage of shares held by non-insiders is "consistent with levels courts find sufficient to support a finding of efficiency." *In re FibroGen*, 2024 WL 1064655, at *11 (approximately 91% float); *Purple Mountain Tr.*, 2022 WL 3357835, at *5 (approximately 90% float); *Petrie*, 308 F.R.D. at 357 (approximately 87% float). The active market for Block options during the Class Period further supports market efficiency. Feinstein Rpt. ¶ 84.

Further, *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) does not "pose a significant obstacle to class certification in securities litigation." *In re BofI*, 2021 WL 3742924, at *7. Here, Lead Plaintiff proposes an out-of-pocket damages methodology that is clearly capable of calculating damages Class-wide, *see* Feinstein Rpt. § IX, and thus satisfies whatever minimal burden might be posed by *Comcast* in a securities class action. *See, e.g.*, *Weston v. DocuSign, Inc.*, 348 F.R.D. 354, 368 (N.D. Cal. 2024) ("Courts regularly reaffirm that the out-of-pocket, or event study, method matches plaintiffs' theory of liability under Section 10(b) of the Securities Exchange Act, making it the standard method for calculating damages in virtually every Section 10(b) class action.").

**B.      Superiority: A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action.**

Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This requirement determines whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In making that determination, "courts consider class members' interests in individual litigation, the extent and nature of other litigation that is already begun by members of the class, the forum, and manageability" of a class action. *Weston*, 348 F.R.D. at 370.

Here, a class action is the superior method for resolving a securities fraud class action because "the common liability issues involved in securities fraud cases are ideally suited for resolution by way of a class action." *In re Honest Co. Sec. Litig.*, No. 2:21-cv-7405-MCS-PLA, 2023 WL 3190506, at *8 (C.D. Cal. May 1, 2023). It is well-established that securities fraud class actions are "an effective way to pursue shareholders' actions for securities fraud." *Borteanu v. Nikola Corp.*, 348 F.R.D. 239, 261 (D. Ariz. 2025); *see also, e.g.*, *Purple Mountain Tr.*, 2022 WL 3357835, at *6 ("The putative class likely consists of thousands of investors, and resolving the dispute in a single class action would be far more efficient than litigating thousands of individual cases."); *Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 575 (C.D. Cal. 2012) ("If united by a common core of facts, and a presumption of reliance on an efficient market, class actions are the superior way to litigate a case alleging violations of securities fraud.").

Each factor relevant to the superiority analysis supports certification here. *First*, Class members' interest in individually controlling the prosecution of separate actions is low. All Class members have an interest in holding Defendants liable for securities fraud, and certifying a single class of investors with common claims is a far more efficient and judicious course than requiring each class member to litigate virtually identical claims in separate actions. *Sayce*, 754 F. Supp. 3d at 900 (finding class action "the superior method of adjudication" where "[t]he alternative methods of resolution are individual claims by geographically dispersed individual plaintiffs" and "[c]lass treatment will increase the class members' access to redress by unifying what otherwise may be multiple small claims"). *Second*, Lead Plaintiff is unaware of any litigation brought by Class members that would counsel against certification. *Third*, there is

- 14 -

nothing about the Northern District of California that renders it undesirable as a forum for litigation. This District has an interest in adjudicating this securities fraud dispute on behalf of the Class because it is where Block is headquartered and where, presumably, a significant amount of the relevant documents and witnesses are located; this Court is already well-versed in this action's factual and legal issues; and "concentrating the litigation of prospective Class [m]embers in one forum removes the risk of inconsistent adjudication and promotes the fair and efficient use of the judicial system." *Lamartina v. VMware, Inc.*, No. 5:20-cv-2182-EJD, 2024 WL 3286059, at *4 (N.D. Cal. July 2, 2024). *Fourth*, the litigation is manageable as a class action. *See, e.g.*, *Sayce*, 754 F. Supp. 3d at 900 ("The complexities of class action treatment do not outweigh the benefits of considering common issues in one trial."). Lead Plaintiff is unaware of any facts or circumstances that would make class treatment inappropriate in this case.

## III.      Proposed Class Counsel Satisfy Rule 23(g)

In appointing class counsel, courts consider counsel's work "in identifying or investigating potential claims," "experience in handling class actions," and "knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1). These factors favor appointing Lieff Cabraser and Cohen Milstein as Class Counsel. *See supra* § I.D.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff's Motion should be granted.

THE NYC FUNDS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:25-CV-00642-NW

Date: March 24, 2026

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

*/s/     Richard M. Heimann*

Richard M. Heimann (S.B.N. 063607)
Katherine Lubin Benson (S.B.N. 259826)
Courtney J. Liss (S.B.N. 339493)
Nicole M. Rubin (S.B.N. 361232)
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
rheimann@lchb.com
kbenson@lchb.com
cliss@lchb.com
nrubin@lchb.com

Steven E. Fineman (S.B.N. 140335)
Daniel P. Chiplock (*pro hac vice*)
Nicholas Diamand (*pro hac vice*)
Gabriel A. Panek (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
sfineman@lchb.com
dchiplock@lchb.com
ndiamand@lchb.com
gpanek@lchb.com

Julie Goldsmith Reiser (*pro hac vice*)
Claire Marsden (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
jreiser@cohenmilstein.com
cmarsden@cohenmilstein.com

Michael B. Eisenkraft (*pro hac vice*)
Benjamin F. Jackson (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
meisenkraft@cohenmilstein.com
bjackson@cohenmilstein.com

*Counsel for Lead Plaintiff NYC Funds and
Co-Lead Counsel for the Proposed Class*

THE NYC FUNDS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:25-CV-00642-NW