UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CORINNE GONSALVES, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BLOCK, INC., JACK DORSEY, and AMRITA AHUJA,<br><br>    Defendants. | Case No. 5:25-cv-00642-NW<br><br>CLASS ACTION<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br> Re:  Dkt. No. 140 |

3466660.2

## I.    PURPOSE

This Order will govern discovery of electronically stored information ("ESI")[1] in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. This Order is based on the proposed protocol (hereinafter "Protocol" or "ESI Protocol") to govern discovery of ESI in this action, to which Lead Plaintiff NYC Funds[2] and Defendants Block Inc. ("Block"), Jack Dorsey, and Amrita Ahuja (collectively "the Parties," and individually, a "Party") jointly stipulated.

## II.    COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## III.    LIAISON

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to endeavor to resolve disputes without court intervention.

## IV.    PRESERVATION

The Parties have discussed their preservation obligations and the scope of potentially relevant ESI. Each Party has disclosed or will disclose the steps it is taking to preserve potentially relevant ESI. The Parties agree that preservation of potentially relevant ESI shall be proportional to the needs of the case.

---

[1] For the avoidance of doubt, "ESI" shall be interpreted consistent with Federal Rule of Civil Procedure 34 and the Northern District of California's Civil Local Rules, and includes, without limitation, information in electronic messaging and collaboration tools and systems, including originals and nonidentical copies that are reasonably accessible and stored on servers, endpoints, mobile devices, removable media, and cloud services. Systems covered by this definition include Slack, Zoom Team Chat/Zoom Chat, Google Chat, Jabber, Webex Teams/Messaging, Apple Messages (iMessage, SMS, MMS), WhatsApp, Signal, Telegram, Discord, any other text messaging systems, any other internal electronic communication systems, and any other cross-platform messaging tools used for business purposes.  Nothing herein constitutes a representation by either Party that any such covered system contains documents relevant to this action or that such systems shall be searched.

[2] "NYC Funds" refers to Teachers' Retirement System of the City of New York, New York City Employees' Retirement System, New York City Fire Pension Fund, New York City Board of Education Retirement System, Police Superior Officers' Variable Supplements Fund, Police Officers' Variable Supplements Fund, Firefighters' Variable Supplements Fund, Fire Officers' Variable Supplements Fund, New York City Fire Department Life Insurance Fund, and Teachers' Retirement System Variable A.

## V.    SEARCH & REVIEW

**Custodial and Non-Custodial Documents**. The Parties will each provide their own proposed custodian lists to be used for the search of custodial ESI. The Parties shall meet and confer in good faith to reach agreement on each Party's custodian list. Each Party shall conduct a reasonable search for responsive documents, including from (a) agreed-upon custodial sources and (b) non-custodial sources. Subject to the limitations on discovery imposed by the Court, the Parties retain the right, upon reviewing the production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and will meet and confer regarding such requests.

**Search Protocol**. The Parties will meet and confer in good faith to agree upon a Search Protocol for each Producing Party (or group of Producing Parties) governing the use of search terms, filters, date ranges, and any advanced culling technologies to be applied to that Producing Party's potentially responsive documents. Each Search Protocol shall identify (a) the criteria used to define the universe of documents to which search terms will be applied and (b) the search terms to be applied to that universe of documents.

Any Party may propose search terms to be included in a Producing Party's Search Protocol. In connection with good-faith negotiations over proposed search terms, a Producing Party objecting to a proposed search term on burden or proportionality grounds shall provide, without waiving objections, search-term hit information for the proposed term as applied to the relevant document corpus, including for each such term, in deduplicated data: (i) total hits; (ii) total hits with family members; and (iii) unique hits (excluding families). The Parties agree that such search-term hit information shall be used solely for the purpose of negotiating and refining search terms.

Nothing in this provision relieves the Producing Party of its obligation to employ proportionate and good-faith search methodologies.

**Culling, Technology Assisted Review and Generative Artificial Intelligence Review**.  A Producing Party that intends to use culling technology such as technology assisted review ("TAR") or generative AI review ("Gen AI") to exclude documents from review shall disclose in advance to the Receiving Party the details of such techniques, including the sources across which culling will be applied and written information regarding any advanced culling methods used to exclude documents from manual review. Nothing herein requires any Party to use, or shall be construed as an endorsement by any Party of,

TAR, Gen AI, or any other similar technology. For the avoidance of doubt, this Section does not apply to standard document processing and data reduction techniques, including de-duplication, de-NISTing, removal of system or junk files, filtering by date range or file type, or the exclusion of files not reasonably capable of containing substantive content (e.g., operating system files, application executables, and temporary files).

A Producing Party that elects to use TAR or Gen AI to exclude documents from human review shall, within a reasonable time before deploying such technology, disclose a TAR/Gen AI Protocol to the Receiving Party. At a minimum, such Protocol shall include: (a) the TAR or Gen AI system to be used; (b) a description of the universe of documents to which TAR or Gen AI will be applied, including the data included in and excluded from its application; (c) the methodology for training the TAR model or developing Gen AI prompts to identify documents to be excluded from human review; (d) the validation methodology and appropriate statistical methods to be used, including a description of any control or validation sets, quality control measures, and periodic assessments of recall and precision appropriate to the collections at issue; and (e) the process for handling documents not conducive to automated review, including multimedia files and other non-text-based content.

Documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective must be reviewed without culling by search terms, predictive coding, TAR, Gen AI, or other technologies that rely primarily on text.

Nothing herein requires the disclosure of privileged seeds or specific training documents.

No Party shall apply search terms to a corpus of potentially responsive documents and then apply TAR or Gen AI to the subset identified by those search terms, or vice versa, for the purpose of excluding documents from review. For the avoidance of doubt, the Plaintiffs reserve the right to object to the utilization of both TAR or Gen AI and search terms together to cull documents from human review, and Defendants reserve the right to seek the utilization of both TAR or Gen AI and search terms together to cull documents from human review. If a Producing Party seeks to cull documents from human review by using search terms on one set of documents and TAR or Gen AI on a different set of documents, the Producing Party will identify each set of documents and state the rationale for the difference in method applied. The Producing Party does not, in providing such a statement, waive any applicable privilege or work product

protections. If the Receiving Party objects to such an approach, the Parties will timely meet and confer regarding the matter and submit any unresolved disputes to the Court for resolution.

**Family Groups**. A "family" means a document and all other documents that are attached to it. The document to which other documents are attached is the "parent," and documents that are attached to the parent are the "children." A document family consists of the full family group of parents and their children, and their children's children (*e.g.*, if an email attaches a PowerPoint presentation, the email and the PowerPoint presentation will all be part of the same document family).

Parent-child relationships (the association between a document and its attachments) will be preserved through the production of an appropriate metadata field. If any member of a family group is determined to be responsive to a Party's document requests, then all members of that group must also be considered subject to production unless privileged or subject to any other protection from discovery.

**Hyperlinked Documents**. Document(s) within a Producing Party's custody, possession, or control that are hyperlinked inside a responsive document in the Producing Party's document production (including hyperlinks inside emails) do not need to be produced in the first instance. Where the Receiving Party is unable to reasonably locate or access a hyperlink target using information provided in the production, the Receiving Party retains the right to make reasonable requests for hyperlinked documents, and such requests shall not be unreasonably denied. In making such requests, the Receiving party shall identify to the Producing Party the Bates number and URL or link text for each requested link, and the Producing Party will engage in a good-faith effort to locate the hyperlinked document at that location and, to the extent the referenced hyperlinked document is located, either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Receiving Party may identify to a Producing Party shall be reasonable and proportional to the needs of the case, and not unduly burdensome.

**Email Threading.** The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a Requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread. The Receiving Party retains the right to make reasonable requests for specific emails that were suppressed as part of a thread, and the

Producing Party shall not unreasonably deny such requests.

## VI.     PRODUCTION FORMATS

The Parties agree to produce documents in TIFF and/or native formats, except as otherwise provided for in this ESI Protocol. If particular documents warrant a different format, the Parties will meet and confer regarding a mutually acceptable production of such documents. The Parties agree to apply industry standard OCR accuracy settings to ensure that documents remain fully searchable as part of the production process. Notwithstanding the foregoing and any other provision in this Protocol, a Party may produce any or all documents in native format as they exist in the ordinary course of business.

**Metadata Fields**. Load files should include, where applicable, the information listed in the Table of Metadata Fields, attached as Exhibit A. However, the Parties are not obligated to include metadata for any document that does not contain such metadata in the original, with the exception of the following: BegBates, EndBates, BegAttach, EndAttach, NativeLink (for native files only), ProdVol, Custodian, AllCustodians, FileType, TimeZone, Confidentiality, Redacted, and Placeholder. The metadata file shall be delimited according to the following characters:

Delimiter = ¶ (ASCII:020)

Text-Qualifier = þ (ASCII:254)

New Line = ® (ASCII:174)

Multi-value delimiter - ; (ASCII Code 059)

**Load Files**. For each produced document, a delimited text file (DAT) containing metadata described in Exhibit A and an image load file (OPT) for TIFF/JPG images shall be provided. The text file name shall be the same as the BegBates of the document; do not include OCR or extracted text within a DAT file. The DAT file should be in Unicode (UTF-8) format.

**Images**. Images may be produced as either single page Group IV TIFFs (300 DPI) with 1-bit rate or color JPGs. Each image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. All documents that contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can display to the user will be processed such that all that

STIPULATED ORDER RE: DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO: 5:25-CV-00642-NW

data is visible in the Image File to the extent reasonably feasible.

**Native Files**.

i.       Any native files (*e.g.*, Excel and Numbers files) produced shall have a Bates-numbered slip sheet stating the documents have been produced in native format. Native files shall be produced with the extracted text and applicable metadata fields.

ii.      Spreadsheets (*e.g.*, Excel, Google Sheets and Numbers) will be produced in native format.

iii.     Presentations (*e.g.*, PowerPoint and Keynote) will be produced in native.

iv.      Audio and video files may be produced in native format.

v.       Delimited text files (*e.g.*, comma-separated value (.csv) files and tab-separated value (.tsv) files) will be produced in native format.

vi.      For any other types of documents, the Parties will meet and confer to discuss requests for the production of files in native format, on a case-by-case basis. Notwithstanding any production permitted under this order in non-native format, where the production of the native file is reasonably necessary to the document's comprehension or use, a request for the native file shall not unreasonably be denied.

vii.     If the Parties are unable to reach agreement with regard to requests for additional documents in native-file format, the Parties reserve the right to seek relief from the Court.

**Text Files and Encoding**. A single multi-page text file shall be provided for each document, and the filename should match the document's BegBates. Extracted text shall be provided at the document level, with one text file per document, and shall be generated directly from the native file where available. Where extraction is not feasible, OCR text shall be provided. Text files shall be delivered encoded in UTF-8. Text files shall not be embedded within the DAT load file. A commercially acceptable technology for optical character recognition ("OCR") shall be used.

**Embedded Objects**. Where reasonably feasible, non-image files embedded within other documents will be produced, either natively within the document in which they were embedded or extracted as separate documents and treated like attachments to that document. Image files embedded within documents, such as signature blocks, need not be extracted as separate documents, so long as they are completely visible in the produced version of the document.

**Deduplication**.

i.    Documents shall be considered exact duplicates of each other if they have the same content hash value or are determined to be exact copies of each other by another reliable automated technological method.

ii.    To the extent exact duplicate documents reside within a Party's ESI data set, the Party shall produce only a single, deduplicated copy of a responsive document.  De-duplication may only be performed at the family level.

iii.    A Producing Party shall globally deduplicate documents and populate a field of data that identifies each designated custodian who had a copy of the produced document (the "AllCustodians" field). Such deduplicated documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial. A Producing Party shall use a uniform description of a particular custodian across productions.

iv.    No Party shall identify and/or eliminate duplicates by manual review.

v.    Hard copy documents shall not be eliminated as duplicates of ESI unless it is clear on their face that they are merely printouts of documents that have already been collected.

vi.    If a newly identified custodian has been added following an initial production of documents, and that custodian is included on documents already produced, the Producing Party also shall provide an overlay file to allow the Receiving Party to update the "AllCustodians" field. The overlay file shall include all custodians listed in the "AllCustodians" field in prior productions and any custodians newly identified in the current supplemental production.

**Compressed Files**. Compression file types (*e.g.*, .CAB, .GZ, .RAR, .TAR, .Z., .ZIP) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files. The container file itself shall not be produced.

**Email Threads and Privilege**. If any portion of an email thread is responsive and non-privileged, the Producing Party shall not withhold the entire thread on the basis that one or more constituent messages are privileged. Rather, the Producing Party shall produce the thread with the privileged portions redacted and the non-privileged portions produced. This provision does not require the production of any message or portion that is independently privileged or protected.

**Chat and Collaboration Messages**. Chat/collaboration data (*e.g.*, Slack, Microsoft Teams, Zoom

Chat, Google Chat, Webex, Jabber) and text messages (*e.g.*, SMS, iMessage) shall be produced in a searchable format that preserves the presentational features of the original message (e.g., emojis, images, and video files), to the extent reasonably feasible, and shall be produced with its relevant conversation thread broken down by 24-hour increments; provided, however, that a Receiving Party may make a reasonable request for a longer or otherwise different context window for a particular conversation thread by written notice to the Producing Party.  The Producing Party shall accommodate such reasonable requests to the extent the requested context window contains additional responsive messages or is material to understanding the context of the produced conversation threads, unless  doing so would be unduly burdensome. The parties may redact any non-responsive messages that are included by virtue of being sent/received within 24 hours of a responsive message so long as the redacted non-responsive message(s) does not substantively relate to or is not necessary to provide context to a responsive message within the 24-hour increment.  Where a conversation or thread spans multiple 24-hour increments, the Producing Party shall maintain consistent conversation or thread identifiers across increments and, to the extent a message is part of a threaded conversation (including Slack "threads"), shall produce the responsive 24-hour increment of the thread in a manner that preserves the relationship between the parent message and all threaded replies. To the extent a Receiving Party reasonably believes that an electronic message was not produced in a searchable format that preserved material presentation features of the original message, the Receiving Party shall identify the message by Bates number, and the producing party will investigate whether it is possible to produce the message in a different format.  The Receiving Party may make a reasonable number of such requests, and the Parties shall meet and confer in good faith regarding any disputes concerning the scope or volume of such requests.

**Foreign Language Documents**. All documents shall be produced in their original language to the extent they are in the Producing Party's possession, custody or control. Where a requested document exists in a foreign language and the Producing Party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the Producing Party shall produce both the original document and all English-language versions. Nothing in this agreement shall require a Producing Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

STIPULATED ORDER RE: DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO: 5:25-CV-00642-NW

**Prior Productions**. A Party may reproduce in this Action materials previously produced in another proceeding in the format originally produced. The Parties shall meet and confer in good faith regarding any specific concerns about the adequacy or usability of such productions.

**Production Media**. The Producing Party shall provide the production data via SFTP or external hard drives, or by way of other electronic transfer, as between accounts at a cloud provider (subject to prior agreement with the Receiving Party), as appropriate. For any production exceeding 100 gigabytes in size, the Producing Party shall reasonably confer with the Receiving Party about the means of transmittal or production before undertaking it. The Producing Party shall encrypt the production data, and the Producing Party shall provide the password to decrypt the production data separately from the SFTP or external drive to which the production data is saved. The Production Media shall identify a production number corresponding to the production volume (*e.g.*, "VOL001," "VOL002").

**Transmittal Letter and Media Labeling**. Each production shall be accompanied by a transmittal letter (or cover email) stating: (a) Producing Party; (b) production date; (c) production volume identifier; (d) Bates range(s) produced; and (e) brief description of content. Physical or electronic media (including secure file transfer packages) shall be labeled or titled with the Producing Party's name, production date, and volume identifier.

**Bates Numbering**. The BegBates and EndBates fields should be populated for all documents sequentially within a given document, between documents, and across the production sets. These fields should not be blank under any circumstance.

The Producing Party will brand TIFF/JPG images in the lower right-hand corner with their corresponding Bates numbers, using a consistent font type and size. The Producing Party will brand all TIFF/JPG images in the lower left-hand corner with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its Bates number and confidentiality designation identified in the filename of the native file or on the associated slip sheet.

**ESI of Limited Accessibility.** The Parties agree to meet and confer in good faith regarding sources of responsive ESI that are potentially not reasonably accessible within the meaning of Federal Rule of Civil Procedure 26(b)(2)(B).

## VII.    COLOR DOCUMENTS AND REQUESTS FOR HIGH RESOLUTION DOCUMENTS

Documents will be produced in color. Upon reasonable, good-faith request identifying specific documents for which higher resolution is necessary for legibility or interpretation, the Producing Party will provide higher-resolution images, or a native version that satisfies the request, within a reasonable time. The number of higher-resolution documents a requesting party may request shall be proportional to the needs of the case and not unduly burdensome.

## VIII.    REQUESTS FOR OTHER VERSIONS OF COLLABORATIVE DOCUMENTS

Certain documents may have been created, edited, or maintained using collaborative platforms such as Google Workspace (e.g., Google Docs, Google Sheets, Google Slides), Microsoft 365, and similar cloud-based applications that track revision history and may reflect contributions from multiple users (collectively, "Collaborative Documents").  The Producing Party's production obligation shall be limited to the version collected in the ordinary course of its preservation and collection efforts. The Receiving Party may request earlier versions of specific Collaborative Documents by identifying the document(s) and the relevant time period, and the Parties shall meet and confer in good faith regarding the scope and feasibility of such production.

## IX.    DOCUMENTS PROTECTED FROM DISCOVERY

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.

**Privilege Log Requirements**. For documents withheld in full pursuant to the attorney-client privilege, attorney-work-product protection, or any other applicable privilege or protection from discovery, the Producing Party shall serve a document-by-document privilege log in Microsoft Excel format that includes, for each entry: (i) a unique document identifier; (ii) BegBates number(s), if assigned; (iii) document type (e.g., email, attachment, memorandum, spreadsheet); (iv) date (for emails, the sent date); (v) sender/author(s); (vi) recipient(s) and copy/bcc recipients, where applicable; (vii) custodian(s) and all custodians; (viii) file name, to the extent not privileged, and file extension (for ESI); (ix) subject or title, to the extent not privileged; (x) basis for withholding (e.g., attorney-client privilege, work product; and (xi) a description sufficient to assess the claim without revealing privileged content. All names and email

addresses of counsel that appear on the log shall be indicated in the log by appending the text "(ATTY.)" following the counsel's name or email address.

The Parties shall meet and confer in good faith regarding the potential use of categorical privilege logs, including but not limited to categorical privilege logs for SARs withheld in their entirety from production on the basis of SAR privilege.

The privilege log shall contain a worksheet listing the name, title, company or firm, and email address of each attorney who appears on the log, as well as a list of all law firms and companies with which those attorneys were associated at the time of the creation of the documents on the log concerning those attorneys, provided that for threaded emails, a Party is not required to itemize every attorney appearing on inclusive emails. Non-inclusive emails that are wholly contained within an inclusive produced thread need not be logged separately. The Parties may agree to categorical logs for voluminous, homogeneous families of documents, provided the categories are disclosed with sufficient specificity.

Each Producing Party shall serve a privilege log within twenty-one (21) days of substantially completing its production or set of productions made in response to a set of Requests for Production. A Producing Party may serve a single consolidated privilege log covering all documents withheld across multiple productions made in response to the same set of Requests for Production. Notwithstanding the foregoing, no later than fourteen (14) weeks before the close of fact discovery, each Producing Party shall serve privilege logs covering all documents withheld on the basis of privilege in any production made up to that date. For any production made after that date, the Producing Party shall serve a corresponding privilege log within fourteen (14) days of that production. To the extent a Producing Party makes supplemental productions after serving its privilege log for a given set of Requests for Production, the Producing Party shall supplement its privilege log within fourteen (14) days of each such supplemental production.  The Parties may agree in writing to different deadlines for serving privilege logs in connection with any particular production or set of Requests for Production.

**Redactions.** The Parties may redact information protected by attorney-client privilege, work-product protection, or any other applicable privilege or protection, as well as protected personal information subject to non-disclosure obligations. Each redaction shall identify its basis on the face of the document. Redactions shall not be based solely on non-responsiveness or relevance, other than the express exception described in

Section 6. Where ESI requires redaction prior to production, the file shall be rendered in TIFF or JPG format with searchable OCR text for non-redacted portions, and the Producing Party shall preserve an electronic copy of the original, unredacted document without modification.  Microsoft Excel or other spreadsheets that need to be redacted may be redacted and produced in native format in a way that preserves underlying data, including but not limited to hidden rows and columns, all cell values, formulae, annotations, and notes.  The Parties agree that redactions do not need to be logged.

## X.   **THIRD-PARTY DISCOVERY**

Any subpoena or document request issued to a non-Party shall attach this Protocol and the operative Protective Order and request that any production be made simultaneously to all Parties. If a non-party produces materials only to one Party, the Receiving Party shall promptly reproduce those materials to all other Parties in the format received within five (5) business days of receipt. Until such reproduction, the Receiving Party shall not use the non-party materials in any filing, deposition, hearing, or expert submission. Subpoenas shall instruct third Parties to provide simultaneous service of productions to all Parties and to use the production specifications set forth in this Protocol unless otherwise agreed.

## XI.   **COSTS**

Unless otherwise ordered, each Producing Party shall bear its own costs of collection, processing, review, and production.

## XII.   **ADDITIONAL PROCESSING SPECIFICATIONS**

**Processing Time Zone**. Unless the Parties agree otherwise in writing, ESI shall be processed using Coordinated Universal Time (UTC) for the extraction and normalization of system-derived date/time metadata fields. The Producing Party shall also populate any requested "TimeZone" metadata field reflecting the system or custodian setting at source, where available.

**System Files**. To reduce noise and burden, the Producing Party may remove from processing and review files matching the current National Software Reference Library (NSRL) Reference Data Set (*i.e.*, "de-NISTing") and other known operating system and application executable files with no user-created content. Such removals shall not apply to user-generated content or to files specifically identified by a Receiving Party.

**Exception Files**. For responsive ESI that is encrypted, corrupted, unsupported, or otherwise cannot

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION CASE NO: 5:25-CV-00642-NW

be processed for production after commercially reasonable efforts (each an "Exception File"), the Producing Party shall provide a placeholder image bearing a unique Bates number and stamped Exception File. Upon reasonable request that specifically identifies an Exception File, the Producing Party will use reasonable efforts to locate and obtain keys necessary to enable processing and will promptly apprise the Receiving Party regarding the status and feasibility of further processing as information becomes available.

**Processing Efficiencies**. The Producing Party may employ industry-standard processing efficiencies, including global deduplication (subject to custodian tracking), de-NISTing, and suppression of known system artifacts that do not contain user-generated content. Items suppressed through these efficiencies need not be logged, but Exception Files shall be slipsheeted as set forth above.

**Technical Variances**. Recognizing that each Producing Party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, to accommodate such issues or where such variance is deemed appropriate to facilitate timely and economical productions. No Party shall unreasonably object to any such variance.

## XIII. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

## XIV. NO WAIVER

Matters not addressed in this Protocol shall not be deemed waived. Rather, any such matters shall be addressed by the Parties at a later time through additional meeting and conferring, and, if necessary, submitted to the Court for resolution.

**IT IS SO STIPULATED**, through Counsel of Record.

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

/s/ Katherine Lubin Benson

Richard M. Heimann (S.B.N. 063607)
Katherine Lubin Benson (S.B.N. 259826)
Courtney J. Liss (S.B.N. 339493)
Nicole M. Rubin (S.B.N. 361232)
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
rheimann@lchb.com
kbenson@lchb.com
cliss@lchb.com
nrubin@lchb.com

Steven E. Fineman (S.B.N. 140335)
Daniel P. Chiplock (*pro hac vice)*
Nicholas Diamand (*pro hac vice)*
Gabriel A. Panek (*pro hac vice)*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212-355-9500)
sfineman@lchb.com
dchiplock@lchb.com
ndiamand@lchb.com
gpanek@lchb.com

Julie Goldsmith Reiser (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
jreiser@cohenmilstein.com

Michael B. Eisenkraft (*pro hac vice*)
Benjamin F. Jackson (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
meisenkraft@cohenmilstein.com
bjackson@cohenmilstein.com

*Counsel for the NYC Funds and Proposed Co-Lead Counsel for the Class*

- 15 -

GIBSON, DUNN & CRUTCHER LLP
By: */s/ Brian M. Lutz*
Brian M. Lutz, SBN 255976
blutz@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8200

Jessica Valenzuela, SBN 220934
jvalenzuela@gibsondunn.com
Jeffrey D. Lombard, SBN 285371
jlombard@gibsondunn.com
Sofia Ritala, SBN 273942
sritala@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301
Telephone: 650.849.5300

Colin B. Davis, SBN 273942
cdavis@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
Telephone: 949.451.3800

*Counsel for Defendant Block, Inc.*

SIMPSON THACHER & BARTLETT LLP

By: */s/ Jonathan K. Youngwood*
Jonathan K. Youngwood, SBN 350373
jyoungwood@stblaw.com
One Market Plaza
Spear Tower, Suite 3800
San Francisco, CA 94105
Telephone: 415-426-7300
Facsimile: 415-426-7301

*Counsel for Defendants Jack Dorsey and
Amrita Ahuja*

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:   April 7, 2026

_____
U.S. MAGISTRATE JUDGE VIRGINIA K. DEMARCHI

3466660.2

**EXHIBIT A**

**TABLE OF METADATA FIELDS**

| **Field Name** | **Field Format** | **Description (Email)** | **Description (E-Files/Attachments)** |
|---|---|---|---|
| BegBates | Text | The document ID number associated with the first page of an email. | The document ID number associated with the first page of a document. |
| EndBates | Text | The document ID number associated with the last page of an email. | The document ID number associated with the last page of a document. |
| BegAttach | Text | The document ID number associated with the first page of a parent email. | The document ID number associated with the first page of a parent document. |
| EndAttach | Text | The document ID number associated with the last page of the last attachment to a parent email. | The document ID number associated with the last page of the last attachment to a parent document. |
| Pages | Number | The number of pages for an email. | The number of pages for a document. |
| ParentDate | Date/Time (MM/DD/YYYY/ HH:MM:SS format) | The date of the parent document. | The date of the parent document. |
| DateSent | Date/Time (MM/DD/YYYY/ HH:MM:SS format) | The date the email or calendar item was sent. | |
| DateReceived | Date/Time (MM/DD/YYYY/ HH:MM:SS format) | The date the email or calendar item was received. | |
| Author | Text | | The name of the author as identified by the metadata of the document. |

3466660.2

- 18 -

| Field Name | Field Format | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|
| From | Text | The display name of the author or sender of an email. | |
| To | Text | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (*e.g.*, fax recipients). |
| CC | Text | The display name of the copyee(s) of an email. | |
| BCC | Text | The display name of the blind copyee(s) of an email. | |
| Subject [unless privileged] | Text | The subject line of an email. | The subject of a document from entered metadata. |
| Custodian | Text | The document's custodian. | The document's custodian. |
| AllCustodians | Text | The document's custodian and the custodians for all copies of the document that were removed as a result of deduplication. | The document's custodian and the custodians for all copies of the document that were removed as a result of deduplication. |
| Date Created | Date/Time (MM/DD/YYYY/ HH:MM:SS format) | | Date document was created. |
| LastModifiedDate | Date/Time (MM/DD/YYYY/ HH:MM:SS format) | | The last modified date from a loose file. |

STIPULATED ORDER RE: DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO: 5:25-CV-00642-NW

| Field Name | Field Format | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|
| LastModifiedBy | Text | Person who last modified or saved the item, as populated in the metadata or document properties of the native file. | Person who last modified or saved the item, as populated in the metadata or document properties of the native file. |
| FileName [unless privileged] | Text | | Original file name at the point of collection. |
| FileExtension | Text | | Original file extension at the point of collection. |
| MD5Hash or SHA1 Hash | Text | Unique MD5 or SHA-1 hash for document. | Unique MD5 or SHA-1 hash for document. |
| TextLink | Text | Extracted OCR text or a link to a file with the text. | Text. |
| NativeLink | Text | Native file link (native files only). | |
| NativeFileLink | Text | Relative path for Documents provided in Native Format only. The linked file must be named per the BegBates value. | Relative path for Documents provided in Native Format only. The linked file must be named per the BegBates value. |
| Title | Text | | File property Title |
| Subject | Text | | File property Subject |
| ProdVol | Text | Name of media that data was produced on. | Name of media that data was produced on. |
| FileType | Text | | Type of file (*e.g.*, Word, Excel). |
| TimeZone | Text | Time zone of data used during processing of data. | Time zone of data used during processing of data. |
| Confidentiality | Text | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. |

3466660.2

STIPULATED ORDER RE: DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO: 5:25-CV-00642-NW

| Field Name | Field Format | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|
| Redacted | Text | "Yes" for redacted documents; "No" for unredacted documents. | "Yes" for redacted documents; "No" for unredacted documents. |
| Redaction Reason | Text | The reason(s) for the redaction(s). If more than one reason, separate by semi-colons. | The reason(s) for the redaction(s). If more than one reason, separate by semi-colons. |
| Placeholder | Text | Yes/No field indicating whether a document has been produced as a placeholder image (*e.g.*, a slipsheet indicating the document was withheld as privileged). | "Yes" for documents produced as a placeholder image; "No" for documents not produced as a placeholder image. |
| RecordType | Text | Indicates item type (e.g., email, email attachment, calendar item, contact, chat / instant message, loose file, embedded file, container). | Indicates item type (e.g., email, email attachment, calendar item, contact, chat / instant message, loose file, embedded file, container). |
| SourceParty | Text | Name of entity or Party producing the item | Name of entity or Party producing the item |
| SourceFilePath | Text | The directory structure or path where the original file was stored on the Party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. | The directory structure or path where the original file was stored on the Party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |

| Field Name | Field Format | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|
| TextPath | Text | Full relative path to the location of the Document-level text file. | Full relative path to the location of the Document-level text file. |

3466660.2

**TABLE OF ADDITIONAL CHAT/COLLABORATION METADATA
TO BE PRODUCED WHEN REASONABLY AVAILABLE**

| Field Name | Field Format | Description (Chat/Collaboration) |
|---|---|---|
| Platform | Text | Chat/collaboration platform (*e.g.*, Slack, Microsoft Teams, Google Chat). |
| Tenant/Workspace/TeamID | Text | Unique identifier for the tenant/workspace/team in the platform. |
| ChannelID | Text | Unique identifier for the channel/space/conversation. |
| Channel Name | Text | Human-readable channel or space name. |
| Channel Type | Text | Channel type (*e.g.*, public, private, DM, multi-party DM). |
| Channel Status | Text | Status events for the channel (*e.g.*, created, deleted, archived) with applicable timestamps if available. |
| MessageID | Text | Unique identifier for the message. |
| ThreadID | Text | Unique identifier for the thread the message belongs to (if threaded). |
| ParentMessageID | Text | Unique identifier for the parent message when the message is a reply. |
| Version Indicator (Edits) | Text | Versioning indicator or edit sequence number if provided by the platform. |
| SenderUserID | Text | Unique identifier for the message sender. |
| Sender Display Name | Text | Display name for the message sender at time of message. |
| Sender Email | Text | Email address of the message sender (where available). |
| Participant List | Multi-value Text | List of participants in the message or conversation context (multi-value). |
| Channel Membership Snapshot as of Message Date | Multi-value Text | Membership list as of the message timestamp (snapshot), if preserved by the platform/collection. |
| Message Timestamp (UTC) | Date/Time (ISO 8601 UTC) | Message timestamp in UTC. |
| Original Time Zone Offset | Text | Original sender/client time zone offset (*e.g.*, -0700) if captured. |
| Edit Flag | Boolean | Indicates whether the message was edited. |

3466660.2

- 23 -

| Field Name | Field Format | Description (Chat/Collaboration) |
|---|---|---|
| Deletion Flag | Boolean | Indicates whether the message or part of it was deleted. |
| Reactions/Emojis | Structured Multi-value | Reaction events including actor, reaction type/emoji, and timestamp (may be multi-valued). |
| Attachment File IDs | Multi-value Text | Identifiers of files attached to the message (multi-value). |
| Attachment Linkage to Message | Text | Linking or join key that associates attachments to the specific message. |
| Hyperlink Target Identifier | Text | Identifier of the hyperlink target (*e.g.*, doc ID, drive file ID, internal object ID). |
| Hyperlink Link Type | Text | Link type (*e.g.*, internal cloud, external URL, file-mount). |
| Hyperlink Resolution Status | Text | Resolution status for links at collection time (*e.g.*, resolved, not found, access denied). |
| Bot/App Indicator | Boolean | Indicates whether the sender or message was generated by a bot/app/integration. |
| External Collaborator/Guest Indicator | Boolean | Indicates presence or participation of external/guest users in the message/channel. |